UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DENISE STOLTENBERG, | No. CV 15-1152-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on February 17, 2015, seeking review of the Commissioner's denial of her application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before the undersigned Magistrate Judge on April 21, 2015, and August 19, 2015. Pursuant to the Court's Order, the parties filed a Joint Stipulation on March 11, 2016, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on October 22, 1954. [Administrative Record ("AR") at 127.] She has past relevant work experience as a cashier-checker, and a stocker. [AR at 25, 41-42.]

On February 27, 2012, plaintiff filed an application for a period of disability and DIB, alleging that she has been unable to work since April 18, 2004. [AR at 20, 127-28.] After her application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 20, 74-79.] A hearing was held on September 10, 2013, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 29-44.] A vocational expert ("VE") also testified. [AR at 40-43.] On September 19, 2013, the ALJ issued a decision concluding that plaintiff was not under a disability from April 18, 2004, the alleged onset date, through December 31, 2007, the date last insured. [AR at 20-25.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 13.] When the Appeals Council denied plaintiff's request for review on December 9, 2014 [AR at 7-11], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's

decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id.

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since April 18, 2004, the alleged onset date.[1] [AR at 22.] At step two, the ALJ concluded that plaintiff has the severe impairments of osteoarthritis; status post shoulder arthroscopy; and Barrett's syndrome. [Id.] He also determined that plaintiff "does not have a severe mental impairment." [AR at 23.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to

---

[1] The ALJ concluded that plaintiff last met the insured status requirements of the Social Security Act on December 31, 2007. [AR at 22.]

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which
(continued...)

4

perform the full range of heavy work as defined in 20 C.F.R. § 404.1567(d).[3] [Id.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform her past relevant work as a cashier-checker, and a stocker. [AR at 25, 41.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of April 18, 2004, through December 31, 2007, the date last insured. [AR at 25.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that: (1) the ALJ erred when he determined plaintiff's RFC because (a) he did not account for plaintiff's severe shoulder and left knee impairments and pain, and (b) he failed to find plaintiff's mental impairment to be severe; (2) the ALJ erred when he rejected plaintiff's subjective symptom testimony; and (3) new evidence submitted to the Appeals Council undermines the ALJ's step two and RFC findings. [Joint Stipulation ("JS") at 3.] As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

### A.  APPEALS COUNCIL EVIDENCE

After the ALJ issued his decision, plaintiff submitted additional evidence to the Appeals Council, covering the time from from 2006 through 2012. [JS at 17, Drake Decl. Ex. A.[4]] Plaintiff states that the Appeals Council "only noted a date on the records from 2012, and then did not include them as part of the administrative record." [Id. (citing AR at 7-11).] Specifically, the Appeals Council stated the following:

---

[2](...continued) the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work." 20 C.F.R. § 404.1567(d).

[4] For ease of reference, the Court will refer to the ECF-generated page numbers when referring to Exhibit A, which was not otherwise numbered.

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. [¶] We found that this information does not provide a basis for changing the [ALJ's] decision. [¶] We also looked at AVORS[5] medical records dated January 27, 2012. The [ALJ] decided your case through December 31, 2007, the date you were last insured for disability benefits. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled at the time you were last insured for disability benefits.

[AR at 7-8.] Although the Appeals Council stated that the additional evidence it considered was listed in its order, the only evidence listed is counsel's October 4, 2013, three-page brief. [AR at 10, 11.] Defendant contends, therefore, that there is no evidence that plaintiff actually submitted the entirety of Exhibit A to the Appeals Council, and this conclusion is further bolstered by the fact that the brief to the Appeals Council did not cite to any of the additional medical records. [JS at 18-19 (citing AR at 182-84).] Defendant contends that if plaintiff did not submit the entire 198 pages to the Appeals Council, and is submitting it to this Court for the first time, then she must show that the evidence is "new and material," and that good cause exists for not having previously submitted the evidence, including showing that it was unavailable earlier -- which, defendant argues, plaintiff cannot do. [JS at 19 (citations omitted).] Further, even assuming that all of Exhibit A was previously submitted to the Appeals Council, defendant argues that the records do not undermine the substantial evidence that supports the ALJ's decision. [JS at 20-21 (citations omitted).]

Plaintiff's counsel represents, under penalty of perjury, that Exhibit A is a "true and correct copy [of the] medical records that were submitted to the Appeals Council in administrative proceedings for this claim," and that Exhibit A was stored electronically in counsel's files as one .pdf document, including a cover letter, in a folder containing "correspondence to the SSA." [Drake Decl. ¶¶ 2, 4.] Plaintiff argues that the Appeals Council failed to make these records part of the record as required by the agency's Hearings, Appeals, and Litigation Law Manual ("HALLEX"), even when the evidence is not related to the period at issue. [JS at 21-22 (citing HALLEX I-3-5-

---

[5] AVORS appears to refer to the Antelope Valley Orthopaedic & Rehabilitation Specialists. [See Drake Decl. Ex. A at 11.]

20, § A, subsec. 3).]

Although the evidence as to whether the entirety of Exhibit A was submitted to the Appeals Council is ambiguous at best, based on counsel's representation, as well as the Appeals Council reference to at least some portion of Exhibit A, the Court will accept plaintiff's counsel's representation that the entirety of Exhibit A was submitted to the Appeals Council, and will address whether those records should have been considered by the Appeals Council.

Under agency regulations, the Appeals Council must consider additional evidence that is new, material, and relates to the period on or before the date of the ALJ's decision. See 20 C.F.R. § 404.970(b)[6]; Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1232-33 (9th Cir. 2011) (remanding to ALJ where it was apparent from Appeals Council's denial of review that it had not considered plaintiff's additional evidence); see also Lamp v. Astrue, 531 F.3d 629, 632-33 (8th Cir. 2008) (remanding where it was not clear from the record whether the Appeals Council had considered plaintiff's additional evidence). New evidence is material if it bears "directly and substantially on the matter in dispute." Luna v. Astrue, 623 F.3d 1032, 1034 (9th Cir. 2010) (quoting Booz v. Sec'y of Health Human Svcs., 734 F.2d 1378, 1380 (9th Cir. 1984) (citation omitted)).

Here, the Appeals Council erroneously determined, based on only a portion of Exhibit A that was dated January 27, 2012[7] -- that all of the submitted evidence pertained to a time later than the date last insured. [AR at 8.] However, Exhibit A actually contains records dating between 2006 and 2012. Such records "relate" to the time period considered by the ALJ as they report on the same conditions plaintiff claimed as the bases of her disability, including some records dating

---

[6] Title 20 C.F.R. § 404.970(b) provides that "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the [ALJ] hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the [ALJ's] hearing decision. It will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." (Emphasis added).

[7] The January 27, 2012, AVORS records relate to plaintiff's shoulder surgery. [See, e.g., Drake Decl. Ex. A at 11-12.]

7

from before her date last insured, and thus may well inform a decision concerning her condition prior to the date last insured. Where, as here, the Appeals Council was required to consider additional evidence, but failed to do so, remand to the ALJ is appropriate so that the ALJ can reconsider the decision in light of the additional evidence. Taylor, 659 F.3d at 1233. Although defendant argues that the records in Exhibit A fail to demonstrate that plaintiff was disabled prior to her date last insured, whether and to what extent the records may reflect that plaintiff was disabled or had impairments or limitations impacting on her ability to perform basic work activities is a decision for the ALJ to make on remand. The Court finds it appropriate for the ALJ on remand to consider the records in Exhibit A to the extent those records shed light on plaintiff's condition, credibility, and limitations prior to her date last insured.

**B.    RFC DETERMINATION**

Plaintiff contends that the ALJ erred by "not contemplating what [the ALJ] deemed to be non-severe mental impairments in the RFC[] assessment." [JS at 3.] She also contends that the ALJ erred when he failed to account for plaintiff's right shoulder and left knee impairments and pain in his RFC assessment. [Id.]

    **1.    Plaintiff's Mental and Physical Impairments**

        **a.    Mental Impairments**

In the decision, the ALJ recited the following:

> [Plaintiff] reported that she has depression and has attempted suicide twice. [T]he record shows that [plaintiff] was diagnosed with bipolar disorder. On April 20, 2012, [plaintiff] presented to psychiatric evaluation with complaints of emotive, vegetative, and cognitive spectrum of symptoms, consistent with depression. The mental status examination reveals low psychomotor activity, circumstantial thought process, depressed and labile mood, labile affect, distractible attention, suicidal ideations with no plan, and impaired concentration. Subsequent treating notes show that [plaintiff's] symptoms improved and became stable on February 8, 2013, 10 months after the initial psychiatric evaluation. The medical evidence shows that [plaintiff] had a suicide attempt in May 2013. [Plaintiff] underwent 5150 evaluation and was psychiatrically cleared for discharge[] and placed off of 5150 hold by law enforcement on the day of discharge. [Plaintiff] was sent home in a stable condition with no evidence of suicide ideation.
>
> Based on the treating record discussed above, the undersigned finds that [plaintiff] does not have a severe mental impairment.

[AR at 22-23 (citations omitted).]

Plaintiff states that the records submitted to the Appeals Council provide evidence that plaintiff was diagnosed with anxiety and depression prior to the date last insured, that she was treated with Buspar, Celexa, Ambien, and Effexor, that her medications "had not provided her with treatment success," and that her "anxiety continued even after the date last insured right up to the date of the hearing verified by a psychiatric 5150 hold four months before the September 10, 2013, hearing date." [JS at 18, 22 (citing Drake Decl. Ex. A at 86, 91, 117-10, AR at 263).] Plaintiff notes that because her past relevant work was a composite job that required heavy lifting and was semi-skilled, "if she were limited to less than heavy work and unskilled work, she would not be able to perform her past relevant work" and, because the ALJ did not make an alternative step five finding that plaintiff could perform other work,[8] "remand is appropriate." [JS at 10.]

Defendant contends that although Exhibit A reflects some treatment for anxiety, it also reflects that plaintiff's anxiety disorder with panic attacks was controlled with medication and otherwise routine treatment, and does not reflect serious mental symptoms longitudinally. [JS at 20-21 (citing Drake Decl. Ex. A at 23-60. 62-93).] Defendant concludes that the records do not reflect plaintiff's allegation "that she had such significant psychological symptoms that she was unable to work." [JS at 21.]

### b. Shoulder Impairment and Osteoarthritis

With respect to plaintiff's shoulder impairment, the ALJ stated the following:

> The medical evidence of record reveals that [plaintiff] presented to the emergency department on February 29, 2004 with complaints of right arm pain and right shoulder pain. Examination of the right shoulder revealed some mild tenderness and decreased range of motion, but intact neurovascular function distally. [Plaintiff]

---

[8] The ALJ obtained testimony from the VE that if a hypothetical 53-year old individual with a tenth grade education, who could stand, walk, and sit for six hours out of eight, was limited to medium or light work, that individual could still perform plaintiff's past relevant work as a cashier-checker, and that there would be entry level jobs at the medium and light levels that such an individual could perform, such as "kitchen helper" (Dictionary of Occupational Titles ("DOT") No. 318.687-010), "packer" (DOT No. 920.587-018), "cashier II" (DOT No. 211.462-010), and "cleaner/ housekeeper" (DOT No. 323.687-014). [AR at 42-43.] The ALJ did not make an alternative step five finding; neither did he include any other limitations in his hypothetical to the VE. [AR at 41-43.]

1 was diagnosed with acute exacerbation of chronic right shoulder pain.

2 [AR at 25 (citations omitted).] He also stated:

> The medical evidence[] of record reveals complaints of shoulder problems in the right shoulder that causes pain, which is exacerbated by motion at the shoulder and elevation of the shoulder. The record indicates that [plaintiff] underwent shoulder arthroscopic rotator cuff repair in June 2012. On examination [on September 28, 2012], [plaintiff's] arthroscopy portal sites are fully healed and pain is well managed with use of Norco.

[AR at 24 (citations omitted).] The ALJ also noted that plaintiff has left knee osteoarthritis and that the "treating record reveals complaints of knee pain and swelling, exacerbated by motion at the knee and walking and relieved by rest and ice. Despite this, the record shows that [plaintiff] has a normal gait." [Id. (citations omitted).]

Plaintiff notes that "[d]espite these factual findings, the ALJ ruled [plaintiff] could perform the full range of heavy work with no reaching limitations, which means she could lift and carry objects weighing 100 pounds and could frequently lift 50 pounds," and that "[e]ven for medium work, '[f]lexibility of the knees as well as the torso is important[.]'" [JS at 9 (citing Soc. Sec. Ruling ("SSR")[9] 83-10).] The Court also notes that even light work may "require[] a good deal of walking or standing," which plaintiff claims exacerbates her left knee osteoarthritis. 20 C.F.R. § 404.1567(b).

### 2. Analysis

An ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. See, e.g., Holohan, 246 F.3d at 1207-08 (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others). As the Ninth Circuit recently explained, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out

---

[9] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014) (citing Holohan, 246 F.3d at 1205); see also Scott v. Astrue, 647 F.3d 734, 739-40 (7th Cir. 2011) (citations omitted) ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce, and that difference is borne out in [the] treatment notes. Those notes show that although [plaintiff] had improved with treatment, she nevertheless continued to frequently experience bouts of crying and feelings of paranoia. The ALJ was not permitted to 'cherry-pick' from those mixed results to support a denial of benefits."). Thus, "[r]eports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." Garrison, 759 F.3d at 1017 (citing Ryan, 528 F.3d at 1200-01); see also Holohan, 246 F.3d at 1205 ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").

Here, the ALJ acknowledged plaintiff's two suicide attempts; depression; bipolar disorder; and April 20, 2012, mental status evaluation that showed "low psychomotor activity, circumstantial thought process, depressed and labile mood, labile affect, distractible attention, suicidal ideations with no plan, and impaired concentration," but noted that ten months after that evaluation there was evidence that her "symptoms improved and became stable," thereby implying that plaintiff's mental impairment had not "lasted or . . . [is not] expected to last for a continuous period of at least twelve months." [AR at 22 (citations omitted).] In the next breath, however, the ALJ reports that three months after her symptoms reportedly "improved and became stable," plaintiff attempted suicide and underwent a 5150 evaluation and was "sent home in a stable condition with no evidence of suicide ideation." [AR at 22-23 (citation omitted).] Based on this recitation of plaintiff's mental health history -- without even considering the fact that the ALJ did not have the benefit of the earlier mental health records contained in Exhibit A demonstrating longitudinal treatment for plaintiff's mental health issues -- the Court cannot conclude that the ALJ's conclusion that plaintiff

does not have a mental impairment that in some way affects her ability to perform basic work activities is supported by substantial evidence.

Similarly, regarding plaintiff's shoulder pain, although the ALJ quotes from plaintiff's doctor's post-arthrosopic surgery report for the proposition that plaintiff's pain is "well managed" with medication, that note actually states that three months after the surgery plaintiff was "still experiencing pain in her right shoulder which is well managed with use of Norco" (a prescription narcotic medication) and "does not yet have a full range of motion . . ." [AR at 256.] Two months later, plaintiff reported that at night her shoulder pain is at 8 on a 10 point scale, and aggravated by movement, although relieved by Norco. [AR at 257.]

Additionally, the ALJ noted that despite plaintiff's diagnosed left knee osteoarthritis, on examination she was found to have a "normal gait," implying that a "normal gait" somehow negated plaintiff's left knee impairment. [AR at 24 (citing AR at 261).]   Although not mentioned by the ALJ, that same February 8, 2013, treatment note explains that plaintiff had a left knee arthroscopy[10] "one year ago," and was presenting with left knee pain that was described as "mild at this time," but which is "exacerbated with range of motion and weightbearing." [AR at 261.] Plaintiff was administered a cortisone injection at that visit and also told that "she needs a left total knee replacement in the future." [AR at 261-62.] Again, the ALJ appears to be making a medical assessment of plaintiff's functioning beyond what is demonstrated by the record, and/or cherry-picking from the record for "sound bites" to support his RFC assessment as well as his ultimate conclusion that plaintiff is not disabled.

**C.    CREDIBILITY**

Because the matter is being remanded for reconsideration of plaintiff's RFC in light of the evidence submitted to the Appeals Council and the deficiencies in the ALJ's RFC assessment as detailed above, on remand the ALJ must also reconsider plaintiff's credibility and provide specific,

---

[10]    The Court notes that plaintiff's right shoulder and left knee surgeries, although occurring after the date last insured, relate to the impairments plaintiff claimed as the bases of her disability and which the ALJ found to be severe.

clear and convincing reasons for discounting plaintiff's subjective symptom testimony if warranted. See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014) (citation omitted) (the "ALJ must identify the testimony that was not credible, and specify 'what evidence undermines the claimant's complaints.'"); Brown-Hunter v. Colvin, 806 F.3d 487, 493-94 (9th Cir. 2015) (the ALJ failed to identify the testimony he found not credible and "link that testimony to the particular parts of the record" supporting his non-credibility determination).

## VI.
## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007); Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, the ALJ shall allow plaintiff to supplement the record with any new medical evidence, including the records comprising Exhibit A. Second, if the ALJ determines it is warranted, the ALJ shall order a consultative examination or examinations, with the appropriate specialist(s) being provided with all of plaintiff's medical records. Third, the ALJ shall reassess the entire medical record, including, if applicable, the new consultative examination(s), and all other medical evidence of record relevant to plaintiff's claim for DIB. As appropriate, the ALJ may request the treating and nontreating sources to provide additional evidence about what plaintiff can still do despite her impairments. The ALJ must then explain the weight afforded to each

1 opinion and provide legally adequate reasons for any portion of an opinion that the ALJ discounts
2 or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of
3 the others.  Fourth, the ALJ shall reassess plaintiff's credibility and provide specific, clear and
4 convincing reasons for discrediting her testimony, if warranted.  Fifth, based on his reevaluation
5 of the entire medical record, and credibility assessment, the ALJ shall determine plaintiff's RFC.
6 Finally, the ALJ shall proceed through step four and, if warranted, step five to determine, with the
7 assistance of a VE if necessary, whether plaintiff can perform her past relevant work or any other
8 work existing in significant numbers in the regional and national economies.

## VII.

## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED:  April 4, 2016

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE